UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OTIS GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09 CV 1724 DDN |
| ) | |
| WALGREEN COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

This action is before the court on the motions of defendants Walgreen Company and Allison Hempel to compel (Doc. 58), the motions of defendants Kyle Boland, the City of Cool Valley, Joan Cronin, Dale Grzeskowiak, Allison Hempel, Natalie Peebles, and Walgreen Company for summary judgment (Docs. 102, 108), and the motions of plaintiff Otis Griffin to dismiss (Docs. 66, 67, 91) and for summary judgment (Doc. 112). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docs. 40, 131.) Oral arguments were heard on June 30, 2010 and October 22, 2010.

**I. BACKGROUND**

On October 15, 2009, plaintiff Otis Griffin commenced this action against the City of Cool Valley (City), Walgreen Company (Walgreen), Allison Hempel, Officers Kyle Boland and Joan Cronin, Cool Valley Police Chief Dale Grzeskowiak, and Natalie Peebles, following his arrest after entering a Walgreen's store on October 18, 2007. (Docs. 1, 60.)

In his amended complaint, Griffin alleges six claims. Counts I through V relate to the October 18, 2007 incident. Count VI relates to an incident at a different Walgreen retail store on May 22, 2009. In Count I, he asserts a claim of reckless investigation against the City, Walgreen, Hempel, Boland, and Cronin. (Doc. 60 at ¶¶ 12-58.) In Count II, he seeks a declaratory judgment that the City, Grzeskowiak, Boland, and Cronin engaged in the unauthorized use of the National Criminal

Information Center Index. (Id. at ¶¶ 59-64.) In Count III, he asserts a claim of failure to train or supervise against the City, Grzeskowiak, Boland, and Cronin. (Id. at ¶¶ 65-83.) In Count IV, he asserts a claim of unreasonable arrest against the City, Walgreen, Hempel, Boland, and Cronin. (Id. at ¶¶ 84-104.) In Count V, he asserts a claim of false imprisonment against Walgreen, Hempel, Boland, and Cronin. (Id. at ¶¶ 105-113.) In Count VI, he asserts a claim of false imprisonment against Walgreen and Peebles regarding the May 22, 2009 incident. (Doc. 60 at ¶¶ 114-139.)

The defendants denied the claims (Docs. 85, 86, 88, 100), and Walgreen and Hempel allege counterclaims (Docs. 85, 86). Hempel asserts a counterclaim for assault against Griffin, alleging that Griffin refused to leave the store and threatened her. (Doc. 85 at 23.) Hempel alleges that she had instructed Griffin several times in the past that he was not welcome at that store, and that if he returned she would contact the police. (Id.)

Walgreen asserts counterclaims for conversion and trespass against Griffin. (Doc. 86 at 28-30.) Walgreen's trespass counterclaim relates to Griffin entering certain of its retail stores despite previously being told not to return, and otherwise refusing to leave. (Doc. 86 at 28-29.) Walgreen's counterclaim for conversion alleges that Griffin stole certain items from an O'Fallon Walgreen store on May 22, 2009, and from an Overland Walgreen store on March 8, 2010. (Id. at 29-30.)

## II. MOTIONS TO DISMISS

Griffin first moves to dismiss Walgreen's counterclaim for conversion under Fed. R. Civ. P. 12(b)(6). (Doc. 66.) Griffin argues that Walgreen's conversion counterclaim is deficient because Walgreen does not identify specifically what merchandise he allegedly stole or how he allegedly stole it, and no police report was filed. (Id.) Walgreen responds that it has satisfied all the necessary pleading requirements for a claim of conversion. (Doc. 73.)

Griffin also moves to dismiss Walgreen's counterclaims for trespass and conversion for lack of jurisdiction. (Doc. 91.)[1] According to Griffin, the court does not have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Walgreen's counterclaims because the counterclaims are not sufficiently connected to the operative facts in his claims. (Id.) Walgreen responds that its counterclaims involve facts connected to Griffin's claims. (Doc. 74). Griffin replies that Walgreen's claims concern events that occurred years after the events giving rise to his claim. (Doc. 80.)

### III.  DISCUSSION

**Sufficiency of the Complaint**

After Griffin moved to dismiss Walgreen's first counterclaim as deficient (Doc. 66), Walgreen filed an amended answer and counterclaim (Doc. 86). Therefore, Griffin's motion to dismiss Walgreen's original counterclaim as deficient (Doc. 66) is moot.[2] Cf. Onyiah v. St. Cloud State Univ., 655 F. Supp. 2d 948, 958 (D. Minn. 2009).

**Supplemental Jurisdiction**

Once a federal court has original jurisdiction over a claim in a cause of action, the court may exercise supplemental jurisdiction "over

---

[1]Griffin re-filed his motion to dismiss Walgreen's counterclaims for lack of jurisdiction after Walgreen filed its amended answer and counterclaim (Doc. 91). Therefore, Griffin's original motion to dismiss (Doc. 67) is moot.

[2]Had Griffin subsequently filed another motion to dismiss, renewing his arguments against the amended counterclaim (as he did with his other motion to dismiss (Docs. 67, 91)), his motion to dismiss would still be denied because Walgreen pleaded sufficient facts to avoid dismissal in its amended answer and counterclaim. See Fed. R. Civ. P. 8(a)(2) (A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."); Berglund v. Cynosure, Inc., 502 F. Supp. 2d 949, 953 (D. Minn. 2007) ("Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party."); Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (A complaint should be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact," Myers v. Richland Cnty., 429 F.3d 740, 746 (8th Cir. 2005) (citation omitted), and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1067 (8th Cir. 1996) (citation omitted). Claims share a common nucleus of operative fact "when there is a link or overlap between the facts of the state and federal claims." Chelsea Condo. Unit Owners Ass'n v. 1815 A St., Condo. Group, LLC, 468 F. Supp. 2d 136, 141 (D.D.C. 2007). In determining whether to exercise supplemental jurisdiction, a court should balance factors such as judicial economy, convenience, fairness, and comity. Quinn v. Ocwen Federal Bank FSB, 470 F.3d 1240, 1249 (8th Cir. 2006).

Griffin's claims and Hempel's counterclaim concern the events that occurred at the Cool Valley Walgreen's store on October 18, 2007. Thus, the court has supplemental jurisdiction over Hempel's counterclaims.[3]

Although Walgreen's counterclaim for trespass allegedly arose after October 18, 2007, it is based on Walgreen's alleged ban of Griffin, which Walgreen contends occurred at the Cool Valley Walgreens store on October 18, 2007. Because the alleged October 18, 2007 ban is central to Walgreen's trespass counterclaim, Walgreen's trespass counterclaim shares a common nucleus of operative fact with Griffin's claims.

Walgreen's conversion counterclaim implicates a series of alleged incidents, spanning years, during which Griffin allegedly repeatedly shoplifted from Walgreen's stores. Walgreen argues that the October 18, 2007 incident was only one incident in a pattern of misconduct involving Griffin — a pattern including the O'Fallon and Overland store incidents in 2009 and 2010. Because the facts surrounding Walgreen's conversion counterclaim implicate the facts of Griffin's claims, there is a

---

[3]At the hearing, Griffin stipulated that he is not challenging the state claims arising out of the events that occurred at the Cool Valley store.

sufficient factual connection between the claims for the court, out of judicial economy, convenience, and fairness, to exercise supplemental jurisdiction over Walgreen's conversion counterclaim.

## IV. MOTION TO COMPEL

Walgreen and Hempel seek to compel disclosure of Griffin's tax records. (Doc. 54.) Walgreen and Hempel argue that Griffin's tax returns are relevant and discoverable because during his deposition on April 2, 2010, Griffin stated that he earned between thirty and forty thousand dollars annually from one of his businesses. Walgreen and Hempel state that the only records regarding Griffin's business indicate that it is dissolved. (Doc. 58, Ex. A-C.) Griffin responds that the tax records are not relevant and are privileged. (Doc. 68). Walgreen and Hempel reply that the tax records undermine Griffin's defense against the conversion counterclaim (that he did not need to steal because he did not need the money), and that the current protective order (Doc. 47) will preserve the confidentiality of the tax records. (Doc. 75).

Public policy disfavors unnecessary public disclosure of tax records because of "the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." Schoenbaum v. E.I. Dupont de Nemours and Co., No. 4:05 CV 1108 ERW, 2009 WL 249099, at *1 (E.D. Mo. Feb. 2, 2009) (citations omitted). See also State ex rel. Wohl v. Sprague, 711 S.W.2d 583, 585 (Mo. Ct. App. 1986)(under Missouri law, although not absolutely privileged, tax returns are entitled to protection in order to "encourage honesty in reporting and to facilitate tax administration in general"). To compel the disclosure of tax returns, the movant must show that (1) "the returns are relevant to the subject matter of the action" and (2) "there is a compelling need for the tax returns because the information contained therein is not otherwise readily available." Schoenbaum, 2009 WL 249099, at *1 (citations omitted). See also E-P Int'l Distribution Inc. v. A & A Drug Co., No. 8:07 CV 186, 2009 WL 1442534, at *6 (D. Neb. May 21, 2009).

- 5 -

Griffin's tax records relate only to a defense which Walgreen and Hempel argue that Griffin will make.[4] At the hearing, Griffin's counsel represented that Griffin would not employ this defense. Thus, Griffin's tax returns are no longer arguably relevant. Further, Walgreen and Hempel have not shown a compelling need for Griffin's tax returns. In sum, Walgreen and Hempel have not made the necessary showings to compel disclosure of Griffin's tax records.

## V. CROSSMOTIONS FOR SUMMARY JUDGMENT

Defendants Officer Boland, Officer Cronin, Chief Grzeskowiak, and the City move for summary judgment on Griffin's claims against them. (Docs. 102, 104.) As to Count I, the City argues that it does not have an unconstitutional custom, practice, or policy. (Doc. 102 at ¶ 4.) As to Counts II, III, IV, and V, Officer Boland, Officer Cronin, Chief Grzeskowiak, and the City argue that there was probable cause to arrest Griffin. (Id. at ¶¶ 3, 5-6, 8.) Officers Boland and Cronin also argue that they are entitled to official immunity. (Id. at ¶¶ 3, 8.)

Defendants Walgreen, Hempel, and Peebles move for summary judgment on Griffin's claims against them. As to Counts I and IV, Walgreen and Hempel argue that, as private actors, they cannot be held liable for Griffin's Section 1983 claims. (Doc. 110 at 3-7.) Walgreen also argues that it cannot be held vicariously liable under Section 1983 for acts of employees, and that there is no evidence that its policies are unconstitutional. (Id. at 8-9.) With regard to Counts V and VI, Walgreen, Hempel, and Peebles argue that Griffin's Section 1983 claims fail for lack of state action, and that the arrest was made on reasonable grounds. (Id. at 9-17.)

Griffin moves for summary judgment on all six of his claims. (Doc. 112.) Generally, Griffin argues that there was no probable cause to arrest him, and that he did not trespass because he had a right to shop at the Cool Valley Walgreen's store. (Doc. 113 at 1-8.) Specifically, Griffin argues that Officer Boland, Officer Cronin, and Hempel are liable

---

[4]At the hearing, Griffin stated that he is not seeking compensation for lost wages.

under Section 1983 because Officers Boland and Cronin advised Hempel to file a criminal complaint against him. (Id. at 9-11.) Griffin further argues that Walgreen is liable under Section 1983 for Hempel's actions (filing a criminal complaint against him). (Id. at 11-12.) Griffin also argues that Officers Boland and Cronin are liable under Section 1983 because they failed to investigate the charged crimes before arresting Griffin, and omitted information from their police reports that tended to negate Griffin's guilt. (Id. at 12-15.) Griffin argues that the City is liable under Section 1983 because of its custom of arresting individuals for assault based solely on verbal threats, and because it exercised deliberate indifference to his Fourth and Fourteenth Amendment rights. (Id. at 15-22.)

With regard to his false imprisonment claims, Griffin argues that Hempel is liable because she filed the criminal complaint against him (Id. at 23-24); Walgreen is liable because it approved Hempel's filing of the complaint (Doc. 113 at 24-25); Officers Boland and Cronin are liable because there was no probable cause to arrest him (Id. at 25-27); and Officers Boland and Cronin are not entitled to qualified immunity (Id.).

## VI. STATEMENT OF UNDISPUTED FACTS

On October 18, 2007, Otis Griffin entered a Walgreen's store on South Florissant Road in Cool Valley, Missouri. (Doc. 135-6, Griffin depo. at 22-23.) Shortly after Griffin entered the store, the store manager, Alisson Hempel, told him to leave the store because he was trespassing (Id.; Doc. 133 at ¶ 148), and because he had previously threatened her (Doc. 133 at ¶ 154). When Griffin did not immediately comply, Hempel threatened to — and ultimately did — call the police. (Doc. 135-6, Griffin depo. at 23.) Store personnel escorted Griffin outside the store; he and they waited near the store entrance for the police to arrive. (Id.; Doc. 133 at ¶ 164.)

Cool Valley Police Officers Kyle Boland and Joan Cronin responded to Walgreen's store. (Doc. 105 at ¶ 14; Doc. 133 at ¶ 13.) Upon their arrival, the officers interviewed Hempel and Griffin. (Doc. 129 at ¶ 4.) Hempel told the officers that Griffin was not allowed in the store, that

he was trespassing, that he previously had been suspected of shoplifting, and that he verbally assaulted her by verbally threatening her with bodily harm. (Doc. 135-6, Griffin depo. at 93; Doc. 133 at ¶¶ 43, 47-48, 161, 169.) She believed it was Griffin who had previously telephoned her at the store and told her that, if he ever caught her outside the store, "he was going to stick me." (Doc. 135-4 at 19.) Hempel also told Officer Boland that she had previously told Griffin that he was not welcome at that Walgreen's store (Doc. 133 at ¶¶ 89, 105), and had previously warned Griffin that if he returned to that store, he would be charged with trespassing (Doc. 105 at ¶ 18). While they were conducting interviews, Hempel told the officers that Griffin was not carrying a weapon, and that he did not physically harm her. (Id. at ¶¶ 161, 166.)

Griffin told the officers that it was a case of mistaken identity: that he was not the man supposedly forbidden to enter the store. (Doc. 135-6, Griffin depo. at 96; Doc. 133 at ¶ 103-04.) After talking to Hempel and Griffin for a few minutes, the officers allowed Griffin to leave. (Doc. 135-6, Griffin depo. at 99; Doc. 133 at ¶ 46.)

Either later that day or the next day, Hempel went to the Cool Valley Police Station and filed a written complaint against Griffin, alleging that he committed third degree assault and trespass. (Doc. 135-1, Cronin depo. at 25-26; Doc. 135-4, Hempel depo. at 7.)

On October 19, 2007, Officer Boland submitted his police report, along with Hempel's written complaint, to Officer Cronin. (Doc. 133 at ¶ 80.) The Incident Report prepared by Officer Boland stated:

> Ms. Hempel wanted to press charges on Mr. Griffin for trespassing and assault and Ms. Hempel advised when she completed her work shift she would respond to Cool Valley Police Department to complete her complaint forms for assault and trespassing.

(Doc. 105-3, Ex. C at 3.) Officer Cronin approved Officer Boland's report (Id. at ¶ 82), and then directed Officer Boland to enter a "wanted" for Griffin in the law enforcement electronic National Crime Information Center (NCIC) Index (Doc. 133 at ¶¶ 17, 27, 83.) The "wanted" informed police units that there was probable cause to believe Griffin had committed trespass and third degree assault. (Doc. 135-1, Cronin depo, at 11-16.)

On November 6, 2007, the police mailed Griffin a summons to appear to answer for first degree trespassing and third degree assault charges. (Doc. 119-5 at 2-3.) Griffin's probation officer learned of the situation, and told Griffin to meet with the Cool Valley Police. (Doc. 135-6, Griffin depo. at 100-01.) On November 29, 2007, Griffin voluntarily went to the Cool Valley Police Station to address the situation. (Id. at 104; Doc. 119-4 at 1.)

Upon arriving at the Cool Valley Police Station, Griffin spoke with Officer Cassaday, and then was read his Miranda rights, questioned, fingerprinted, and photographed. (Doc. 135-6, Griffin depo. at 106-11; Doc. 119-4 at 7.) Griffin was placed in a holdover cell during the process, which lasted between 45 minutes and one hour. (Doc. 135-6, Griffin depo. at 109.) Griffin was never placed in handcuffs. (Id.) Griffin spoke with the officer about the incident, and wrote and signed a statement about what happened. (Id. at 110-11.)

On December 5, 2007, Griffin appeared in court and entered a plea of not guilty. (Doc. 119-5 at 2-3.) The case was set for a jury trial on January 9, 2008. (Doc. 135-6, Griffin depo. at 115-16; Doc. 119-5 at 4.) However, on January 9, the prosecutor filed a memorandum of *nolle prosequi* because neither Hempel nor a store patron, Ashely Green, appeared as a witness for the trial. (Doc. 119-5 at 1.)

On May 22, 2009, Griffin went into a Walgreen's store in O'Fallon, Missouri. (Doc. 135-5, Peebles depo. at 7.) Natalie Peebles, the store manager, suspected Griffin of shoplifting, and told him to leave the store. (Doc. 133 at ¶¶ 192-193.) Peebles drew her suspicions from prior encounters with Griffin and a recorded video surveillance tape. (Doc. 135-5, Peebles depo. at 15-17.) Peebles called the police, informed them that Griffin was stealing merchandise, gave them the surveillance video, and gave them an inventory report of stolen items. (Doc. 133 at ¶¶ 193-196; Doc. 135-5, Peebles depo. at 7-8.) Based on the inventory report, Peebles believed that Griffin stole twenty-eight boxes of Breathe-Right Nasal Strips, and four bottles of Pepcid antacid. (Doc. 133 at ¶ 195.)

The City of O'Fallon pursued the charges against Griffin, and a municipal judge found him guilty.[5] (Doc. 135-6, Griffin depo. at 50.) Thereafter, Griffin invoked his right to a *de novo* trial in the Circuit Court of Saint Charles County. (Id. at 50-51.) After several continuances, the prosecutor dropped the charges. (Id. at 51-52; Doc. 133 at ¶ 196.)

## **VII. MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or in general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co. v. Stone, No. 1:09 cv 1 SNLJ, 2010 WL 330328, at *2 (E.D.Mo. Jan. 21, 2010).

---

[5]There is some confusion as to whether the municipal judge entered a guilty plea on Griffin's behalf based on Griffin's statements to the judge, or independently found him guilty. (Doc. 135-6, Griffin depo. at 50-51.)

## VIII.  DISCUSSION

**A.  Section 1983 Claims**

Section 1983 of Title 42, United States Code, creates a cause of action for civil rights violations. <u>Crumpley-Patterson v. Trinity Lutheran Hosp.</u>, 388 F.3d 588, 590 (8th Cir. 2004). To state a Section 1983 claim, a plaintiff must allege (1) the violation of a right secured by the Constitution and the laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law.  42 U.S.C. § 1983; <u>Roe v. Humke</u>, 128 F.3d 1213, 1215 (8th Cir. 1997).

### 1.  Officers Boland and Cronin

A warrantless arrest may be actionable under Section 1983 if not supported by probable cause. <u>Kiser v. City of Huron</u>, 219 F.3d 814, 815 (8th Cir. 2000). "In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." <u>Anderson v. Cass Cnty., Mo.</u>, 367 F.3d 741, 745 (8th Cir. 2004). Probable cause is defined as a "reasonable ground for belief of guilt," which means "more than bare suspicion, but less than evidence which would justify condemnation or conviction." <u>Baribeau v. City of Minneapolis</u>, 596 F.3d 465, 474 (8th Cir. 2010). <u>See also</u> <u>United States v. Ramires</u>, 172 F. Supp. 2d 1208, 1212 (D. Neb. 2001) (rule applicable to a warrantless arrest).

"[A]n officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime . . . ." <u>Kuehl v. Burtis</u>, 173 F.3d 646, 650 (8th Cir. 1999). <u>See also</u> <u>United States v. Burbridge</u>, 252 F.3d 775, 778 (5th Cir. 2001); <u>Delgado v. Hajicek</u>, No. 07-2186 RHK/RLE, 2008 WL 2042606, at *6 n.8 (D. Minn. May 12, 2008). In addition, "[t]here is no strict requirement that the statements of an average citizen must be corroborated by law enforcement to establish the requisite reliability to support probable cause." <u>United States v. Wesseh</u>, No. 06-cr-284 MJD/SRN, 2007 WL 465392, at *4 (D. Minn. Feb. 8, 2007).

Based on Hempel's undisputed statements (Doc. 105 at ¶¶ 17-20, 22, 27-28, 37-42), Officers Boland and Cronin "possessed knowledge of a credible report from a credible eyewitness . . . ." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 790 (3d Cir. 2000). In addition, in Kiser v. City of Huron, 219 F.3d 814 (8th Cir. 2000), the Eighth Circuit affirmed that a police officer was not liable under Section 1983 even though the officer arrested the plaintiff solely on the victim's complaint. Kiser, 219 F.3d at 815-16. In sum, based on Hempel's complaint, Officers Boland and Cronin had probable cause to arrest Griffin and, thus, their entry of his name in the NCIC was lawful.[6]

Griffin argues that the facts did not establish probable cause to believe he assaulted Hempel, because he did not act physically toward her. This argument is without merit. Under Missouri law,

> an assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril. The assault is complete if the intent with the present means of carrying it into effect exists and preparations therefor have been made, even though there has been no actual violence to the person.

Armoneit v. Ezell, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001)(internal citations omitted). In this case, it is undisputed that Griffin orally threatened physical harm to Hempel to her face in the store. When he did so, she perceived that he had the ability to carry out his threats. Any failure on his part to physically act consistent with his threat to do her bodily harm did not detract from the probable cause showing that he assaulted her.

In order to allege a substantive due process violation, Griffin must show not only that defendants' conduct violated one of his fundamental rights, but also that defendants' conduct shocks the conscience. Norris

---

[6] In addition, police officers are entitled to qualified immunity so long as there is "arguable probable cause." Armine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008). That is, police officers are entitled to qualified immunity "if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Id. At a minimum, Hempel's statements to Officers Boland and Cronin established arguable probable cause for qualified immunity purposes.

v. Engles, 494 F.3d 634, 637-38 (8th Cir. 2007).  For the reasons discussed above, Griffin has not made this showing, and thus, the officers are not liable under Section 1983.

   **2. Hempel**

   Private individuals are ordinarily not subject to Section 1983 liability.  Carlson v. Roetzel & Andress, 552 F.3d 648, 650 (8th Cir. 2008).  That said, private individuals who act in concert with state officials may fall within Section 1983's reach.  DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999).  To determine if an individual acted in concert with state officials, courts consider such factors as: "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional government function; and whether the incident is aggravated in a unique way by the incidents of governmental authority."  Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007).

   Griffin argues that under Fraser v. County of Maui, 855 F. Supp. 1167 (D. Hawaii 1994), Hempel can be held liable under Section 1983 for filing a written complaint.  Fraser held that a private citizen acts under color of state law for Section 1983 purposes when he or she fills out a private complaint "as a result of the police's advice."  Id. at 1177-78.  In Fraser, the police informed the private individual about the crime of harassment, gave the private individual a copy of the relevant state statute, and advised the private individual how to effectuate a citizen's arrest.  Id. at 1178.  The citizen acted on the counsel of the police, and performed a citizen's arrest.  Id. at 1172.

   The present facts are distinguishable from those in Fraser.  Officer Boland stated that he and Officer Cronin "advise[d] Miss Hempel that if she wanted to file charges against Mr. Griffin she would have to respond to [the police] station to file a complaint," through which Hempel would be "basically stating . . . that she wanted to advise Mr. Griffin he was trespassing and the assault (sic)."  (Doc. 105-1, Boland depo., Ex. A at 8.)  The Incident Report prepared by Officer Boland clearly stated that Hempel wanted to press charges against Griffin for trespassing and assault and that she said that, when she completed her work shift, she

would go to the Cool Valley Police Department to fill out the complaint forms for assault and trespassing. (Doc. 105-3, Ex. C at 3.) Similarly, Officer Cronin confirmed that it is the procedure of the Cool Valley police to "ask the victim to come to the station, [to] complete complaint forms." (Doc. 120-1, Cronin depo., Ex. H at 22.) Hempel's deposition testimony confirmed that it was ultimately her decision to file a complaint. (Doc. 120-1, Hempel depo., Ex. B at 7.) Therefore, Griffin has failed to establish a legally sufficient connection between Hempel and the police to impose Section 1983 liability upon Hempel for filing a written complaint against him.

Griffin also points to Murray v. Wal-Mart, Inc., 874 F.2d 555 (8th Cir. 1989), and Holloway v. Ameristar Casino St. Charles, Inc., No. 4:07 CV 218 DDN, 2008 WL 762086 (E.D. Mo. Mar. 19, 2008). Both of these cases, however, involved private security guards who were licensed by the state, Murray, 874 F.2d at 559; Holloway, 2008 WL 762086, at *3, as opposed to a manager at a retail store, with no connection to the police, who filed a complaint with the police. Cf. Briscoe v. LaHue, 460 U.S. 325, 329-34 (1983) (recognizing absolute immunity for private witnesses who testify at a judicial proceeding); Hammond v. Wilson, No. 2:08-cv-01063, 2009 WL 467648, at *1 (S.D. Ohio Feb. 23, 2009) (holding a private citizen who gave a statement to the police during a criminal investigation was not subject to a Section 1983 suit); Marion v. Groh, 954 F. Supp. 39, 42-43 (D. Conn. 1997) (same).

Therefore, Hempel was not acting under color of state law when she filled out the complaint against Griffin, and is therefore not subject to Section 1983 liability.

### 3. Walgreen Company

Similarly, Griffin has not shown that Walgreen was acting under color of state law at the time of the alleged constitutional violations. Griffin argues that Walgreen is liable under Section 1983 for Hempel's actions because Hempel was acting with Walgreen's approval when she filed a complaint against Griffin. (Doc. 133 at 11.) However, Griffin's Section 1983 claim against Walgreen fails because, as previously

discussed, Griffin has not shown that Hempel's filing a complaint adversely affected his constitutional rights.

In addition, a private corporation cannot be held liable under a respondeat superior theory in a Section 1983 claim. Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993). Rather, a plaintiff must establish that a corporation had an unconstitutional policy or custom, or that an individual representing the official policy of the company inflicted an injury actionable under Section 1983. Smith, 499 F.3d at 880; Crumpley-Patterson, 388 F.3d at 590-91. To prove an unconstitutional policy, custom, or official action, a plaintiff must show: "a continuing, widespread, persistent pattern of unconstitutional misconduct by [the company's] employees; [d]eliberate indifference to or tacit authorization of such conduct by [the company's] policymaking officials after notice to the officials of that misconduct; and [the plaintiff] was injured by acts pursuant to [the company's] custom, i.e., that the custom was the moving force behind the constitutional violation." Crumpley-Patterson, 388 F.3d at 590-91 (internal citations omitted).

Griffin argues that Walgreen is liable under Murray and Holloway. However, in Murray, Wal-Mart had a policy of working with the police department to prosecute shoplifters, detained the plaintiff pursuant to an Arkansas statute authorizing such conduct, and otherwise authorized its employee to conduct an unlawful search of the plaintiff's purse after detaining the plaintiff. Murray, 874 F.2d at 559.

Similarly, in Holloway, the plaintiff alleged Ameristar created an unconstitutional policy or custom, under which it acted with the police to deprive her of her Fourth, Eighth, and Fourteenth Amendment rights. The plaintiff alleged that she was grabbed, restrained, and assaulted by Ameristar employees. The plaintiff further alleged that Ameristar employees did not provide her with timely medical treatment, refused to state their names, and coaxed the police officer into having her sign her name with an "x." The plaintiff also alleged that Ameristar edited tape-recordings of the incident, pursuant to a company custom or practice. Holloway, 2008 WL 762086, at *4.

Unlike the customs in Murray and Holloway, there is no evidence of a "persistent pattern of unconstitutional misconduct" by Walgreen's employees, nor has there been "tacit authorization of such conduct" by Walgreen's policymaking officials after notice to them of that misconduct, or that Griffin was injured by the custom. See Crumpley-Patterson, 388 F.3d at 590-91 (internal citations omitted).

In sum, Griffin has not shown how Walgreen's policy of allowing store managers to contact the police in the event that the store manager suspects a customer of theft violated his Fourth and Fourteenth Amendment rights. Therefore, his Section 1983 claim against Walgreen fails.

### 4. City of Cool Valley

Griffin argues that the City has an unlawful custom of arresting citizens for assault based solely upon verbal threats. (Doc. 113 at 16-17.) Under Cool Valley Municipal Code 13.76(3), third degree assault includes "purpose[fully] plac[ing] another person in apprehension of immediate physical injury." (Doc. 120-1 at 10-11.) This definition echos that of Missouri law. See Mo. Rev. Stat. § 565.070.

Under Missouri law, criminal assault does not require actual violence, but rather, only requires an "intentional offer of bodily injury to another, coupled with the present ability to carry out the attempt if unprevented." State v. Neil, 579 S.W.2d 840, 841 (Mo. Ct. App. 1979). See also Armoneit, 59 S.W.3d at 632; Mo. Rev. Stat. § 565.070 cmt. (explaining that the statute "makes it clear that deliberately frightening a person is a crime").

Griffin also argues that the City has unlawful customs of: issuing wanteds in lieu of conducting an independent investigation (Doc. 113 at 17-18); intentionally failing to investigate misdemeanor complaints of "assault" and "trespass" (Doc. 113 at 18-20.); and issuing wanteds in lieu of obtaining arrest warrants (Doc. 113 at 20-22). Because Hempel's complaint gave Officers Boland and Cronin probable cause, Kuehl, 173 F.3d at 650, these arguments are moot and need not be decided.

**B. False Imprisonment Claims**

Under Missouri law, "[f]alse imprisonment, also called false arrest, is the confinement, without legal justification, by the wrongdoer of the person wronged." Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. 2006) (internal citations omitted). A false imprisonment claim contains two elements: "(1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint." Gibbs v. Blockbuster, Inc., 318 S.W.3d 157, 169 (Mo. Ct. App. 2010). "A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest." Highfill,, 186 S.W.3d at 280.

Merely reporting facts to the police does not give rise to a false imprisonment claim. Id.; Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Similarly, both the truth of a defendant's complaint to police, Blue, 170 S.W.3d at 473, and probable cause,[7] Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855-56 (8th Cir. 2001), Edwards v. McNeill, 894 S.W.2d 678, 683 (Mo. Ct. App. 1995), are complete defenses to a false imprisonment claim. Alternatively, the fact that the information provided to the police is inaccurate or incorrect is insufficient alone to maintain a false imprisonment claim. Gibbs, 318 S.W.3d at 169-70. Rather, a plaintiff must prove something more, such as that the defendant knowingly provided the inaccurate or incomplete information to effectuate an illegal arrest. Id.

Griffin argues that Officer Boland, Officer Cronin, Hempel, Peebles, and Walgreen are liable for false imprisonment because he was not convicted of the charged crimes. (Doc. 113 at 23.) However, the fact that Griffin was not convicted of the charged crimes is not determinative of his false imprisonment claims. See Highfill, 186 S.W.3d at 282 (refusing to adopt standard under which liability depended on conviction because "the complaining citizen has no control over whether the police

---

[7]Because "the defense of probable cause is a question of fact for the jury" in a false imprisonment claim, Blue, 170 S.W.3d at 480, the court will not consider probable cause defenses for purposes of the parties' summary judgment motions on Griffin's false imprisonment claims.

decide to arrest someone or whether the prosecutor decides to bring charges").

### 1. Hempel

Although the parties dispute whether Griffin actually threatened Hempel or other Walgreen employees on or before October 18, 2007, with regard to his false imprisonment claim against Hempel, Griffin argues only that he was not convicted of the charged crimes, that Hempel's complaint led to his arrest, and that his arrest was not supported by probable cause. (Doc. 113 at 23-24.)

Even if true, these arguments are insufficient as a matter of law to impose liability upon Hempel. See Gibbs, 318 S.W.3d at 169-70 ("One who merely gives information regarding an offense justifying arrest does not incur liability even though, in giving such information, he acts maliciously or acts without probable cause, unless he goes beyond such point and instigates the arrest by suggestion and encouragement and countenances it."); Highfill, 186 S.W.3d at 280-81. Therefore, Hempel is entitled to summary judgment.

### 2. Officers Boland and Cronin

Under Missouri law, official immunity shields officers from liability for their discretionary acts, such as conducting an arrest, so long as those acts are not done in bad faith or with malice, or as part of a conscious wrongdoing. Blue, 170 S.W.3d at 479. Bad faith or malice is shown by "actual intent to cause injury." Id. Bad faith "signifies a dishonest purpose or conscious wrongdoing or breach of a known duty through ulterior motives or ill will." Conway v. St. Louis Cnty., 254 S.W.3d 159, 165 (Mo. Ct. App. 2008). As for malice, "the officer must do that which a man of reasonable intelligence would know to be contrary to his duty and intend such action to be injurious to another." Id.

Griffin argues that Officers Boland and Cronin negligently assumed Griffin was guilty of the charged crimes. (Doc. 113 at 26.) However, "[p]olice officers are not liable for negligent acts that are related to discretionary functions." Blue, 170 S.W.3d at 479.

Griffin further argues that Officers Boland and Cronin were not entirely convinced that Griffin committed the crimes alleged by Hempel. (Doc. 113 at 25-26.) Griffin argues that Officers Boland and Cronin should have: conducted further investigation before arresting Griffin; reviewed the video surveillance tape from October 18, 2007 that would have exonerated Griffin; interviewed witnesses; reviewed video surveillance tape from prior dates to confirm that Griffin was the man banned by Hempel; and waited for a judge or prosecutor to decide if charges were warranted. (Id. at 26-27.) However, even if the officers had a duty to perform these acts, failure to do so would, at most, rise only to the level of negligence, which is insufficient to overcome official immunity. Blue, 170 S.W.3d at 479. See also Southers v. City of Farmington, 263 S.W.3d 603, 610 n.8, 611 (Mo. 2008) (noting that Missouri does not recognize gross negligence, as relevant to the official immunity analysis). In addition, "[o]fficers are not required to conduct a 'mini-trial' before arrest . . . ." Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 817 (8th Cir. 2010) (citations omitted).

Therefore, because there is "no evidence in the record of any intentional wrongdoing on the part of police defendants, nor is there any evidence of ulterior motives or ill will," Officers Boland and Cronin are entitled to official immunity. Conway, 254 S.W.3d at 165.

### 3. Peebles

Griffin argues that Peebles is liable for false imprisonment because she never witnessed him steal items from a Walgreen's store. (Doc. 60 at ¶¶ 113-34.)

However, Peebles acquired her belief by watching a video surveillance tape, which she believed showed Griffin stealing items from the store. (Ex. J, Peebles Dep., p. 7, line 15, p.9, line 22). In her deposition, Peebles indicated that she still believes Griffin stole items from the Walgreen's store on May 22, 2009. (Doc. 110-1, Ex. J at 38.)

As with his false imprisonment claim against Hempel, Griffin has failed to establish a basis for Hempel's false imprisonment liability. See Gibbs, 318 S.W.3d at 169-70; Highfill, 186 S.W.3d at 280-81. Therefore, Peebles is entitled to summary judgment.

**4. Walgreen Company**

Because all Walgreen Company employees are relieved of false imprisonment liability, Walgreen is also entitled to summary judgment on Griffin's false imprisonment claim. See <u>Rustici v. Weidemeyer</u>, 673 S.W.2d 762, 767 (Mo. 1984); <u>Zobel v. General Motors Corp.</u>, 702 S.W.2d 105, 106 (Mo. Ct. App. 1985); <u>Williams v. Venture Stores, Inc.</u>, 673 S.W.2d 480, 482 (Mo. Ct. App. 1984).

**5. Remaining State Law Counterclaims**

Because Griffin's federal law claims fail, the court declines to exercise supplemental jurisdiction over Hempel's state law counterclaim (Doc. 85) or over Walgreen's state law counterclaim (Doc. 86). See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction); <u>Thomas v. Dickel</u>, 213 F.3d 1023, 1026 (8th Cir. 2000); <u>Franklin v. Zain</u>, 152 F.3d 783, 786 (8th Cir. 1998).

Therefore, these state law counterclaims are dismissed without prejudice.

### IX. CONCLUSION

An appropriate Judgment Order is issued herewith denying Griffin's motions to dismiss (Docs. 66, 67, 91), denying Walgreen's and Hempel's motion to compel (Doc. 58), granting defendants' motions for summary judgment (Docs. 102, 108), denying plaintiff's motion for summary judgment (Doc. 112), and dismissing without prejudice Hempel's counterclaim (Doc. 85) and Walgreen's counterclaims (Doc. 86).

                                              /S/   David D. Noce
                                     **UNITED STATES MAGISTRATE JUDGE**

Signed on December 2, 2010.